Battle, J.
'-«Burglary, at common law, is defined to be... the breaking and entering the dwelling house of ánother, in the night time, with intent to commit a felony therein. Roscoe’s Cr. Ev., 298, State vs. Langford, 1 Dev. Rep., 253, State vs. Jenkins, 5 Jones’ Rep., 430. Every per-, manent building, in which the owner or renter and his family, or any member thereof, usually and habitually dwell and sleep, is deemed a dwelling in which this crime may be committed. See Ros. Cr. Ev., .29f, and the authorities there referred to, and State vs Jenkins, ubi supra. The term “ dwelling house ” includes within it not only the house in which the owner or renter and his family, or any member of it3 may live and sleep, but all other houses appurtenant thereto, and used as part- and parcel thereof, such as kitchen, smoke house, and the like ; provided they are-within the curtilage; or are adjacent, os very near to the dwelling house. State vs. Langford, ubi supra, State vs. White, 4 Jones, 349. If the kitchen, smoke house, or other house of that kind, be placed at a great distance from the dwelling, and particularly if it stand outside of the curtilage, or inclosed yard, it cannot' be considered a part o£the dwelling house, for the purpose of being protected against a burglary. The reason is that the law protects, from unauthorized violence, the dwelling house and those whieh are appurtenant, because it is the place .of the owner’s repose ; and if he choose to put jiis kitchen or smoke house so far - from his dwelling that his repose is not likely to be disturbed by the breaking into "it. at night, it is his own foil). In such eases the law will no more protect him than it will when he leaves his doors or windows open. State vs. Langford, ubi supra.
*82 The principles, which we have thus stated, as establishing the kind of house in which a burglary may be com-mittd, we do not understand the counsel on either side to dispute. In their application to the facts of the case now before us, the counsellor the prisoner contends : 1st, That the house in which the Superintendent Pulliam slept, was not such an one as the law recognizes as a dwelling house ; and,‘secondly, if it were, the smoke, or meat house which was broken open, was so situated in. reference to it,' that it oould not be considered as a part or parcel of it.
Upon the first point, our opinion is against the position taken by the prisoner’s counsel. The building is described to be a small log house, and is called a log cabin; but • t appears to have been ■ a substantial, permanent one : and therein differs from, a tent or a booth erected itt a market or fair, in which no burglary could be committed, although the owner lodges in it. See 1 Hawk Pl. Cr., ch. 88, sect. 35, 1 Hale Pl. Or., 559, Ros. Cr. Ev., 300. This house was in truth, the dwelling house of the owners of the tobacco factory, and not of the Superintendent, Pulliam, he being only their servant or employee. See State vs. Curtis, 4 Dev. and Bat. Rep. 222. But if it. were taken to be the dwelling of-Pulliam, there is a’ count in the indictment which so states it.
As to the second position taken for the prisoner, there is, perhaps more doubt, but upon mature consideration, we think it is in his favor. The dwelling house in which Pulliam usually slept was uninclosed, and. of course had no curtilage, or inclosed yard; and the smoke house stood upwards of a hundred feet from it. The factory and the smoke house had a common inclosure, from which the log dwelling was excluded. Under these circumstances, it seems too much to say that the 'smoke house was appurte- *83 *ant to the log dwelling house. Indeed, it did not ap-pearto hare been used as such ; for Pulliam, wh.o. slept in it, did not carry the key to it, except occasionally : that being usually carried by the acting manager of the partnership, who lived and slept in a dwelling house about a quarter of a mile off.- The smoke, house was doubtless used for the purpose ®f storing meat and other things for the use of all the perspns, white and black, who were engaged in the tobacco factory established at that place. It was the “ carelessness or indifference” of the proprietors, which place'd it in such a situation that it would not enjoy that protection-“which the law affords against a bur-glarious entry.
The judgment must be reversed, and this decision be certified to the Superior Court, to the end, &e.